# United States Court of Appeals for the Federal Circuit

05-1238


JAN K. VODA, M.D.,

Plaintiff-Appellee,

v.


CORDIS CORPORATION,

Defendant-Appellant.


Mitchell G. Stockwell, Kilpatrick Stockton LLP, of Atlanta, Georgia, argued for plaintiff-appellee. With him on the brief was Jonathan K. Waldrop. Of counsel was John A. Kenney, McAfee & Taft, of Oklahoma City, Oklahoma.

John M. DiMatteo, Willkie Farr & Gallagher LLP, of New York, New York, argued for defendant-appellant. With him on the brief were Kelsey I. Nix and Diane C. Ragosa.

William C. Rooklidge, Howrey LLP, of Irvine, California, for amicus curiae American Intellectual Property Law Association. With him on the brief were Christopher J. Kelly, Mayer, Brown, Rowe & Maw LLP, of Washington, DC; and Claudia Wilson Frost and Sharon A. Israel, of Houston, Texas.

William M. Atkinson, Alston & Bird LLP, of Charlotte, North Carolina, for amicus curiae The Federal Circuit Bar Association. With him on the brief was Charles F. Schill, The Federal Circuit Bar Association, of Washington, DC.

Scott R. McIntosh, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, for amicus curiae United States. With him on the brief were Peter D. Keisler, Assistant Attorney General. Of counsel on the brief were James A. Toupin, General Counsel, John M. Whealan, Solicitor, Cynthia C. Lynch and Joseph G. Piccolo, Associate Solicitors, United States Patent and Trademark Office, of Arlington, Virginia.

George L. Graff, Paul, Hastings, Janofsky & Walker LLP, of New York, New York, for amicus curiae Intellectual Property Owners Association. With him on the brief were J. Jeffrey Hawley, Intellectual Property Owners Association, of Washington, DC, and Douglas K. Norman, Eli Lilly and Company, of Indianapolis, Indiana. Of

counsel was <u>Herbert C. Wamsley</u>, Intellectual Property Owners Association, of Washington, DC.

<u>John R. Thomas</u>, Georgetown University Law Center, of Washington, DC, for amici curiae Law Professors.

Appealed from:  United States District Court for the Western District of Oklahoma

Judge Tim Leonard

# United States Court of Appeals for the Federal Circuit

05-1238

JAN K. VODA, M.D.,

Plaintiff-Appellee,

v.

CORDIS CORPORATION,

Defendant-Appellant.

_____

DECIDED: February 1, 2007

_____

Before NEWMAN, GAJARSA, and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> GAJARSA. Dissenting opinion filed by <u>Circuit Judge</u> NEWMAN.

GAJARSA, <u>Circuit Judge</u>.

This is an interlocutory appeal by Cordis Corp. from a decision of the U.S. District Court for the Western District of Oklahoma assuming supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367 over the foreign patent infringement claims of Jan K. Voda, M.D. ("Voda"). The district court established jurisdiction over Voda's original claims of U.S. patent infringement pursuant to § 1338. In a subsequent order, the district court granted Voda leave to amend his complaint to add infringement claims based on foreign patents. Voda's amended complaint alleged infringement taking place outside the United States in violation of patents issued by various foreign countries.

The district court found subject matter jurisdiction over the foreign patent claims pursuant to the supplemental jurisdiction statute § 1367. Voda v. Cordis Corp., No. 03-1512, slip op. at 2 (W.D. Okla. Aug. 2, 2004). The district court certified its order for interlocutory review pursuant to § 1292(b). We agreed that the interlocutory appeal "involve[s] a controlling question of law to which there is a substantial difference of opinion and for which an immediate appeal may materially advance the ultimate termination of the litigation" and thus, granted Voda's petition for interlocutory appeal of "whether the district court has supplemental subject matter jurisdiction over Dr. Voda's five foreign patents." Voda v. Cordis Corp., 122 Fed. App'x 515 (Fed. Cir. 2005). This court has jurisdiction pursuant to § 1292(b) and (c).

In Stein Associates, Inc. v. Heat & Control, Inc., 748 F.2d 653, 658 (Fed. Cir. 1984), this court held that U.S. district courts had no discretionary power to enjoin a party from enforcing a foreign patent before a foreign tribunal. We stated unequivocally that "the issues are not the same, one action involving United States patents and the other involving British patents" and that "[o]nly a British court, applying British law, can determine validity and infringement of British patents." In this case, we are presented with a different issue but one that raises similar concerns: whether a district court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over infringement claims based on foreign patents. For the reasons discussed below, we conclude that the district court erred in granting leave to amend based on § 1367. Accordingly, we vacate the order of the district court granting leave to amend and remand for further proceedings consistent with this opinion.

05-1238

2

## I. BACKGROUND

The plaintiff-appellee Voda is a resident of Oklahoma City, Oklahoma. The defendant-appellant Cordis is a U.S.-based entity incorporated in Florida. None of the several foreign Cordis affiliates is a party to the present action, and we note that they appear to be separate legal entities.[1] These foreign affiliates have not been joined to this action.[2] To prevent confusion, we refer to the defendant-appellant as "Cordis U.S."

The patents at issue relate generally to guiding catheters for use in interventional cardiology. The details of the technology are not essential here. Voda's U.S. patents stem from a common continuation-in-part ("CIP") application filed in October 1992, which provides the written description common to the three U.S. patents at issue in this case: U.S. Patent Nos. 5,445,625 (the '625 patent), 6,083,213 (the '213 patent), and 6,475,195 (the '195 patent). The foreign patents issued from a common Patent Cooperation Treaty ("PCT") application. The PCT application designated the European Patent Office ("EPO") and Canada as recipients. Voda's EPO patent application eventually generated European Pat. No. 0 568 624, British Pat. No. GB 568 624, French Pat. No. FR568624, and German Pat. No. DE 69 23 20 95. The PCT application also ultimately led to the issuance of Canadian Pat. No. CA 2,100,785.

Voda sued Cordis U.S. in the United States District Court for the Western District of Oklahoma alleging infringement of his three U.S. patents: claims 1-2 and 5-7 of the

---

[1] For example, in addition to Cordis (U.S.), there are Cordis U.K., Ltd., Cordis S.A. (France), Cordis G.m.b.H. (Germany), Cordis S.p.A. (Italy), and Cordis Benelux (Netherlands). All of the Cordis companies, both U.S. and foreign, are members of the Johnson & Johnson family of companies.

[2] Therefore, to the extent that the dissent suggests that the district court has personal jurisdiction of the foreign Cordis entities, it is incorrect. See Dissent 1, 10, 19.

05-1238

'625 patent, claims 1-5 of the '213 patent, and claims 1-6 of the '195 patent. Cordis U.S. answered by asserting noninfringement and invalidity of the U.S. patents.

Voda then moved to amend his complaint to add claims of infringement of the European, British, Canadian, French, and German foreign patents. Voda's amended complaint alleges that "Cordis [U.S.] has commenced and continues acts of making, selling, offering for sale and selling at least the XB guiding catheter, which is covered by [the several foreign patents] without Dr. Voda's authority. Such acts constitute infringement, under corresponding foreign law of [these several foreign patents]." Cordis U.S. has admitted that "the XB catheters have been sold domestically and internationally since 1994. The XB catheters were manufactured in Miami Lakes, Florida from 1993 to 2001 and have been manufactured in Juarez, Mexico since 2001." Voda's amended complaint asks for damages, fees, and "such other and further relief as this Court deems just and proper." We resolve the jurisdictional issue based upon those allegations, accepting them to be true.

Cordis U.S. opposed Voda's attempt to amend its complaint to add foreign patent infringement claims on the basis that the district court lacked subject matter jurisdiction over such claims. The parties briefed the court regarding its jurisdiction over foreign patent infringement claims under 28 U.S.C. § 1367(a) and its discretion to exercise supplemental jurisdiction under § 1367(c). In a three-page order, the district court analyzed two circuit court cases discussing supplemental jurisdiction over patent claims, Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368 (Fed. Cir. 1994) (finding no jurisdiction), and Ortman v. Stanray, 371 F.2d 154 (7th Cir. 1967) (affirming district court's denial of a motion to dismiss foreign patent infringement claims). The district

court determined that "[t]he allegations in the [proposed] amended complaint demonstrate that this case is more akin to Ortman than to Mars" and thus, that "it would have supplemental jurisdiction over the foreign patent[] claim[s]." Voda v. Cordis, No. CIV-03-1512-L, slip op. at 2 (August 2, 2004). Therefore, the district court granted Voda's motion to file his amended complaint. Id.

Cordis U.S. appeals, and in light of this appeal, the proceedings with respect to the foreign patent infringement claims have been stayed.[3] The record indicates that an answer to the amended complaint has not been filed and that discovery has not been taken on the foreign claims. While the record therefore does not establish the defenses Cordis U.S. would raise, Cordis U.S. represents on appeal that it would raise invalidity of the foreign patents as a defense.

A proper exercise of subject matter jurisdiction pursuant to § 1367 requires both the presence of jurisdiction under subsection (a) and an appropriate decision to exercise that jurisdiction under subsection (c). For the reasons discussed below, we conclude that the district court erred under subsection (c).

## II. STANDARD OF REVIEW

The existence of supplemental jurisdiction over foreign patent claims based on claims of U.S. patent infringement is a question unique to U.S. patent law, and thus, we apply the law of our circuit rather than that of the regional circuit. Mars, 24 F.3d at 1371 ("The issue whether the district court had jurisdiction to hear Mars' claim of Japanese patent infringement is of importance to the development of the patent law and is clearly

---

[3] It appears that the district court conducted a jury trial on Voda's U.S. patent infringement claims, and that the jury found in favor of Voda on May 25, 2006. (Jury Verdict, May 25, 2006.) None of the parties or amicus curiae informed the court of this event, and we do not consider it necessary to our ultimate holding.

05-1238

5

a matter that falls within the exclusive subject matter responsibility of this court." (quotation marks and citations omitted)); see Lab. Corp. of Am. Holdings v. Chiron Corp., 384 F.3d 1326, 1330 (Fed. Cir. 2004) (applying Federal Circuit law because we "apply the law of the regional circuit . . . unless the issue pertains to or is unique to patent law, in which case we will apply our own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right" (quotation marks omitted)); cf. Unitherm Food Sys. v. Swift-Eckrich, Inc., 126 S. Ct. 980, 984 (2006) (recognizing that Federal Circuit is bound to apply procedural law of regional circuit in case where issue did not pertain uniquely to patent law).

We have noted that "[t]his Court . . . reviews jurisdiction, a question of law, de novo." Dehne v. United States, 970 F.2d 890, 892 (Fed. Cir. 1992) (citation omitted); see also Elder v. Holloway, 510 U.S. 510, 516 (1994) ("[Q]uestion[s] of law . . . must be resolved de novo on appeal."). "A party seeking the exercise of jurisdiction in its favor bears the burden of establishing that such jurisdiction exists." Mars, 24 F.3d at 1372 (citing KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936)); cf. DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1861 (2006) ("[P]arties . . . asserting federal jurisdiction[] carry the burden of establishing their standing under Article III."). Here, Voda must carry this burden.

## III. DISCUSSION

The Supreme Court has stated many times that the "district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, ---, 125 S. Ct. 2611, 2616-17 (2005) (quoting Kokkonen v. Guardian Life Ins. Co. of Am.,

511 U.S. 375, 377 (1994)). In addition, "district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by [the Supreme] Court applies." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 174 (1997).

In this case, the parties do not dispute that the Constitution may authorize district courts to hear infringement claims based on foreign patents. See U.S. Const. art. III, § 2 ("[J]udicial Power shall extend . . . to Controversies . . . between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."). Rather, the critical disputed issue is whether there is any statutory basis for such subject matter jurisdiction.[4]

## A. Asserted Statutory Basis

Voda asserts that the district court has supplemental jurisdiction under 28 U.S.C. § 1367 of his foreign patent infringement claims.[5] The Supreme Court has noted that the statute "is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." Exxon, 125 S. Ct. at 2620. "The presence of other claims in

---

[4] The dissent broadly states that no court has held "that it had no power or authority to receive the foreign issue." Dissent 6. Yet, the first case cited by the dissent to support this broad proposition, written by the dissenting author, held that there was no jurisdiction and alternatively, affirmed the dismissal based on forum non conveniens. See Bonzel v. Pfizer, Inc., 439 F.3d 1358, 1362-65 (Fed. Cir. 2006); see also Mars, 24 F.3d at 1373-75 (holding that no federal question or supplemental jurisdiction existed).

[5] Voda has asserted no other statutory basis for subject matter jurisdiction. Therefore, the dissent's assertion that "judicial authority to determine and apply foreign law does not require that the foreign issue is supplemental to a domestic issue," Dissent 8, is irrelevant in this case. Similarly, the cases cited by the dissent that rely on federal question jurisdiction or diversity jurisdiction are inapposite. See, e.g., Uebersee Finanz-Korporation, A.G. v. McGrath, 343 U.S. 205, 206 (1952) (claim under U.S. law, Trading with the Enemy Act of 1917); Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 61-63 (1st Cir. 2002) (claim under U.S. copyright law); Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998) (diversity jurisdiction); see also Dissent 3-5.

05-1238

the complaint, over which the district court may lack original jurisdiction, is of no moment." Id.; cf. Marshall v. Marshall, 126 S. Ct. 1735, 1749 (2006) (stating in diversity context that jurisdiction "is determined by the law of the court's creation and cannot be defeated by the extraterritorial operation of a [state] statute . . . , even though it created the right of action" (quotation marks and citations omitted)).

The Supreme Court has also noted that § 1367 both "authorize[s] the district courts to exercise supplemental jurisdiction" and "confirms the discretionary nature of supplemental jurisdiction." Chicago, 522 U.S. at 172-73. Therefore, to allow Voda to amend his complaint to add infringement claims based on foreign patents using § 1367 supplemental jurisdiction, we must evaluate (1) whether § 1367(a) authorizes such supplemental jurisdiction and (2) whether the district court's exercise of such supplemental jurisdiction was within its § 1367(c) discretion.

1.    Authorization

Section 1367(a) provides the statutory authority for district courts to exercise supplemental jurisdiction over certain claims outside their original jurisdiction.

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). This language reveals four limits on the reach of § 1367(a).

First, § 1367(a) does not authorize supplemental jurisdiction where "expressly provided otherwise by Federal statute." In this case, none of the parties or the amicus

05-1238
8

curiae cite any statute, and we have found none, that expressly strips federal courts of supplemental jurisdiction of claims arising under either foreign patents or foreign laws.

Second, § 1367(a) lists subsection (b) as an exception. Subsection (b) pertains to "any civil action of which the district courts have original jurisdiction founded solely on" diversity and thus, is not relevant here.

Third, § 1367(a) also lists subsection (c) as an exception. We discuss subsection (c), which enumerates the circumstances under which the "district courts may decline to exercise supplemental jurisdiction," in infra Part III.A.2.

Fourth, § 1367(a) authorizes supplemental jurisdiction only over claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This statutory "case or controversy" language extends to the limits of Article III. See, e.g., Jones v. Ford Motor Credit Co., 358 F.3d 205, 212 n.5 (2d Cir. 2004); Baer v. First Options of Chicago, Inc., 72 F.3d 1294, 1299 (7th Cir. 1995).

In this case, it is undisputed that the district court has original federal question jurisdiction over Voda's U.S. patent infringement claims. In addition, § 1367(a) appears to authorize supplemental jurisdiction over foreign law claims in certain limited circumstances. Specifically, § 1367(a) provides the statutory authority for federal courts to exercise supplemental jurisdiction over claims that are outside the limited original jurisdiction of federal district courts, including those within the general jurisdiction of state courts. Therefore, because the "inherent powers" of state courts "permit them to entertain transitory causes of action arising under the laws of foreign sovereigns," Tafflin v. Levitt, 493 U.S. 455, 470 (1990) (Scalia, J., concurring) (citing McKenna v. Fisk, 42

U.S. (1 How.) 241, 247-249 (1843)), § 1367 supplemental jurisdiction appears to include foreign law claims. See also Printz v. United States, 521 U.S. 898, 907 (1997) ("[U]nlike legislatures and executives, [courts] applied the law of other sovereigns all the time."). Therefore, the § 1367(a) issue we discuss here is whether Voda's claims of foreign patent infringement "form part of the same case or controversy under Article III."

> a. "Common nucleus of operative fact"

The Supreme Court has interpreted the statutory requirement of § 1367(a) that foreign claims be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" as Congress's codification of the Court's

> principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that "derive from a common nucleus of operative fact," such that "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'"

Chicago, 522 U.S. at 164-65 (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)) (additional citations omitted) (emphasis added); see also 13B Wright, Miller, Cooper & Freer, Federal Practice & Procedure § 3567.1, at n.42 (2d ed. Supp. 2005).

With regard to the relationship between foreign and U.S. patent infringement claims, we stated in Stein that "the issues are not the same" where "one action involv[es] United States patents and the other involv[es] British patents." 748 F.2d at 658. Mars, 24 F.3d 1368, however, is the first and only case of this court that expressly evaluates whether supplemental jurisdiction under § 1367(a) extends to infringement

05-1238

10

claims based on foreign patents. In Mars, we applied the "common nucleus of operative fact" rubric to determine whether § 1367(a) authorized supplemental jurisdiction over an infringement claim based on a Japanese patent. We held that "the district court erred in assuming that it had 'power' to hear the Japanese patent infringement claim under section 1367(a)." Id. at 1375. Based on the facts alleged in the complaint, we reasoned:

> We conclude that the foreign patent infringement claim at issue here is not so related to the U.S. patent infringement claim that the claims form part of the same case or controversy and would thus ordinarily be expected to be tried in one proceeding. [1] The respective patents are different, [2] the accused devices are different, [3] the alleged acts are different, and [4] the governing laws are different. The assertion of supplemental jurisdiction over the Japanese infringement claim would in effect result in the trial court having to conduct two separate trials at one time.

Id. Regarding the first three factors, we noted (1) that in the U.S. patent "[a]ll three claims are method claims directed to the electronic examination and identification of coins" whereas "[i]n contrast, the sole claim of the Japanese Patent . . . is an apparatus claim that does not literally contain the limitations of [the asserted] claims . . . of the U.S. patent"; (2) that the claims of U.S. and Japanese patent infringement focused on different devices and that "the range of accused devices in Japan is much broader than in the United States"; and (3) that although Mars charged the defendant with acts of both direct and induced infringement of its U.S. patent, it charged the defendant with only direct infringement of the Japanese patent. Id.

In this case, Voda does not dispute the assertion of Cordis U.S. that the "governing laws in each of the foreign courts differ in important ways." The parties dispute whether the patents are different. Cordis U.S. asserts that the patents differ

05-1238

11

materially, while Voda asserts that they differ only in slight respects.[6]  With respect to the other factors, however, there appear to be more commonalities than in Mars. Voda's amended complaint identifies Cordis U.S.'s XB guiding catheter as the accused device for the domestic and foreign infringement claims.  Voda also alleges the same type of direct infringement, i.e., making, offering for sale, and selling, for all infringement claims.

In addition, it is important to note that Mars does not supplant the "common nucleus of operative fact" test established by the Supreme Court in Gibbs and codified by Congress in § 1367(a).  Mars simply listed four differences between the claims in that particular case that were sufficient for finding no "common nucleus of operative fact."  As such, while providing precedential guidance, Mars did not establish either an exhaustive list of the factors district courts may consider under § 1367(a) or the necessary conditions for a finding of no supplemental jurisdiction.

The district court failed to articulate any such analysis.  The district court correctly observed that Mars did not establish a per se rule preventing U.S. courts from asserting supplemental jurisdiction to adjudicate foreign patents, but then summarily concluded that the "allegations in the amended complaint demonstrate that this case [wa]s more akin to Ortman[, 371 F.2d 154 (7th Cir. 1967),] than to Mars.  Based on those allegations, the [district] court [found] that it would have supplemental jurisdiction over the foreign patents claims."  Voda, slip op. at 2.  Even if we agreed that this case were

---

[6]     Therefore, none of the parties would agree with the dissent's conclusions that "the specifications are the same" or that the patents "are identical."  Dissent 10, 13. Moreover, it is unclear how the dissent arrives at these conclusions when the French and German patents are in different languages, and the record on appeal provides no translations.

05-1238

12

"more akin" to <u>Ortman</u> than <u>Mars</u>, that does not answer the legal question of whether there is a "common nucleus of operative fact" in this case.

Here, the district court did not articulate any findings regarding the <u>Mars</u> factors.[7] Moreover, although the determination of foreign law is a question of law, we as an appellate court cannot take any expert testimony to determine the extent of the differences in the governing laws. <u>See</u> Fed. R. Civ. P. 44.1 (governing determination of foreign law). Since the scope of a foreign patent depends on foreign law, such testimony would also inform a comparison of the patents themselves. Therefore, because we hold in <u>infra</u> Part III.A.2 that the district court abused its discretion under § 1367(c), we deem it to be the more prudent course not to decide this "common nucleus of operative fact" question in the first instance.

> b. *"Ordinarily be expected to try them all in one judicial proceeding"*

Seizing on the Supreme Court's language in <u>Gibbs</u>, one of the amicus curiae asserts that in determining the existence of "the same case or controversy" under § 1367(a), we must examine not only whether there is a "common nucleus of operative fact," but also whether a district court would "ordinarily be expected to try [domestic and foreign patent infringement claims] all in one judicial proceeding."

While courts generally focus on the phrase "common nucleus of operative fact," there is an ambiguity in <u>Gibbs</u>, in which the Supreme Court stated:

---

[7] The Supreme Court has stated that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 n.13 (1978) (citation omitted). The dissent cites no authority to the contrary to support its position that it is "unfair" and "inappropriate to criticize the judge for not making findings or taking evidence at the pleading stage." Dissent 11.

> The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a <u>common nucleus of operative fact</u>. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would <u>ordinarily be expected to try them all in one judicial proceeding</u>, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

383 U.S. at 725 (citation and footnote omitted) (emphasis added). From the text of <u>Gibbs</u>, it is therefore unclear how the phrases "common nucleus of operative fact" and "ordinarily be expected to try them all in one judicial proceeding" relate.

The Court's subsequent use of the <u>Gibbs</u> language indicates that the phrases could represent two separate and necessary tests or that the phrase "ordinarily be expected" is irrelevant. <u>Compare</u> <u>Exxon</u>, 125 S. Ct. at 2632 (Ginsburg, J., dissenting) ("'[T]here is power in federal courts to hear the whole,' the Court said, when the <u>state</u> and federal claims 'derive from a common nucleus of operative fact' and are so linked that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" (emphasis added)), <u>and</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 349 (1988) ("The Court stated that a federal court has jurisdiction over an entire action, including <u>state-law</u> claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" (emphasis added)), <u>with</u> <u>Chicago</u>, 522 U.S. at 165 ("[T]he <u>state</u> and federal claims 'derive from a common nucleus of operative fact,' . . . . That is all the statute requires to establish supplemental jurisdiction." (citation omitted) (emphasis added)).

Similarly, this court's use of the <u>Gibbs</u> language indicates that the phrases could represent two separate and necessary tests or that the phrase "ordinarily be expected

05-1238

14

to try them all in one judicial proceeding" merely informs the "common nucleus of operative fact" analysis. Compare Stark v. Advanced Magnetics, Inc., 29 F.3d 1570, 1578 (Fed. Cir. 1994) (finding § 1367 requirements met where "there is a substantial federal claim; the federal and state claims derive from common operative facts; and the plaintiff would normally expect to try all of the claims in a single proceeding"), with Highway Equip. Co., Inc. v. FECO, Ltd., 469 F.3d 1027, 1037-38 (Fed. Cir. 2006) ("For this relatedness requirement to be satisfied, '[t]he state and federal claims must derive from a common nucleus of operative fact' such that they would ordinarily be expected to be tried in one proceeding." (citation omitted)), and Mars, 24 F.3d at 1374 ("The Court further explained that the requisite relatedness between the federal and non-federal claims exists for jurisdictional purposes when the claims derive from a 'common nucleus of operative fact,' and as such, would ordinarily be expected to be tried in one proceeding.").

If the phrase "ordinarily be expected to try them all in one judicial proceeding" does play a role in the scope of § 1367(a) authorization via Gibbs, district courts may be unable to exercise supplemental jurisdiction over claims based on foreign patents if the norm is that patent claims are adjudicated by the courts within the jurisdiction where such patents are created. Neither the Supreme Court nor this court, however, has addressed whether the phrase "ordinarily be expected to try them all in one judicial proceeding" constitutes an independent requirement under the "same case or controversy requirement" of § 1367(a). Because the district court abused its discretion under § 1367(c), however, we need only state in this case that none of the briefs have persuaded us to hold that such an additional requirement exists.

05-1238

Accordingly, we refrain from deciding whether Voda's foreign patent infringement claims fall within the scope of the "same case or controversy" requirement of § 1367(a).

2.      Discretion

Section 1367 "reaffirms that the exercise of supplemental jurisdiction is within the discretion of the district court."  Mars, 24 F.3d at 1374; see also Chicago, 522 U.S. at 172 (stating that supplemental jurisdiction statute codifies principle "that pendent jurisdiction 'is a doctrine of discretion, not of plaintiff's right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons" (quoting Gibbs, 383 U.S. at 726)).   A district court's discretion, however, is not unfettered, and we review the district court's decision not to decline supplemental jurisdiction under 28 U.S.C. § 1367(c) under an abuse of discretion standard.  Mars, 24 F.3d at 1375 n.4; see also Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("We review the decision of the district court to exercise supplemental jurisdiction over state law claims for an abuse of discretion.").  We address the limits of that discretion here and conclude that the district court's exercise of supplemental jurisdiction over Voda's foreign patent infringement claims is independently limited by subsection (c).

Section 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>     (1) the claim raises a novel or complex issue of State law,
>     (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>     (3) the district court has dismissed all claims over which it has original jurisdiction, or
>     (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Supreme Court has noted that the "statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" Chicago, 522 U.S. at 173 (citation omitted).

Voda asserts that such considerations "have nothing to do with, the certified question concerning existence of subject-matter jurisdiction." We disagree. The text of § 1367(a) indicates § 1367(c) constitutes an express statutory exception to the authorization of jurisdiction granted by § 1367(a). In this case, Cordis U.S. asserted that the district court should exercise its discretion to decline supplemental jurisdiction of Voda's foreign patent claims at the end of its opposition to Voda's motion to amend the complaint. The district court's order contained no § 1367(c) analysis. We find that considerations of comity, judicial economy, convenience, fairness, and other exceptional circumstances constitute compelling reasons to decline jurisdiction under § 1367(c) in this case and therefore, hold that the district court abused its discretion by assuming jurisdiction.

### a. Treaties as the "supreme law of the land"

Article VI of the Constitution proclaims that "all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land." U.S. Const. art. VI, cl.2. The Supreme Court has accordingly stated that "a treaty ratified by the United States is not only the law of this land, see U.S. Const., Art. II, § 2, but also an agreement among sovereign powers." El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 167 (1999) (citation omitted).

The United States entered into Articles 13 through 30 of the Paris Convention for the Protection of Industrial Property ("Paris Convention") on September 5, 1970 and Articles 1 through 12 of the Paris Convention on August 25, 1973. Paris Convention, art. 13-30, 21 U.S.T. 1583; id., art. 1-12, 24 U.S.T. 2140. Article 4*bis* of the Paris Convention states that U.S. patents "shall be independent of patents obtained for the same invention in other countries" and that the "foregoing provision is to be understood in an unrestricted sense, . . . both as regards the grounds for nullity and forfeiture." In addition, Article 2(3) of the Paris Convention states that the "provisions of the laws of each of the countries of the Union relating to judicial and administrative procedure and to jurisdiction, . . . which may be required by the laws on industrial property are expressly reserved." The Paris Convention thus clearly expresses the independence of each country's sovereign patent systems and their systems for adjudicating those patents. Nothing in the Paris Convention contemplates nor allows one jurisdiction to adjudicate the patents of another, and as such, our courts should not determine the validity and infringement of foreign patents. Accordingly, while the Paris Convention contains no express jurisdictional-stripping statute, we relied on it in Stein to hold that "[o]nly a British court, applying British law, can determine validity and infringement of British patents." 748 F.2d at 658.

Subsequently, the United States adopted the Patent Cooperation Treaty ("PCT") on January 24, 1978. Patent Cooperation Treaty, 28 U.S.T. 7645. As with the Paris Convention, the text of the PCT maintains the independence of each country's patents. Article 27(5) states: "Nothing in this Treaty and the Regulations is intended to be

construed as prescribing anything that would limit the freedom of each Contracting State to prescribe such substantive conditions of patentability as it desires."

On January 1, 1995, the United States joined the World Trade Organization by entering the Marrakesh Agreement Establishing the World Trade Organization, which through Article II § 2 binds all of its members to the Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPS"). 1867 U.N.T.S. 154, 33 I.L.M. 1144 (Apr. 15, 1994). The Agreement on TRIPS contains several provisions regarding the enforcement of patents. Article 41 § 1 of the Agreement on TRIPS specifies that each country "shall ensure that enforcement procedures as specified in this Part are available under their law so as to permit effective action against any act of infringement of intellectual property rights." In addition, § 4 states that "[p]arties to a proceeding shall have an opportunity for review by a judicial authority of final administrative decisions and, subject to jurisdictional provisions in a Member's law concerning the importance of a case," and § 5 states "[i]t is understood that this Part does not . . . affect the capacity of Members to enforce their law in general." See also id., art. 41-49. Like the Paris Convention, nothing in the PCT or the Agreement on TRIPS contemplates or allows one jurisdiction to adjudicate patents of another.[8] Canada, France, Germany, and the United Kingdom, which are the foreign sovereigns concerned in this case, are parties to

---

[8] While the European Patent Convention ("EPC") states nothing of our government's intent because the United States is not a party, it may inform us on how other sovereigns treat foreign patent adjudication. Regarding claims "to the right to the grant of a European patent," the EPC has enumerated rules specifying courts of exclusive jurisdiction. European Patent Convention, Protocol on Recognition, art. 1-8, October 5, 1973. None of the treaties entered into by the United States contain such language. Moreover, while there have been working parties and draft agreements and statutes, even the members of the EPC have not yet agreed on a centralized European patent court. See European Patent Office, "Legislative Initiatives in European Patent Law" (July 26, 2006), available at http://patlaw-reform.european-patent-office.org/epla/.

05-1238

each of these treaties. <u>See</u> World Intellectual Property Organization, "States Party to the PCT and the Paris Convention and Members of the World Trade Organization" (2006), <u>available at</u> http://www.wipo.int/pct/en/texts/pdf/pct_paris_wto.pdf.

Voda asserts and one of the amicus curiae briefs suggests that these international treaties evince a trend of harmonization of patent law and thus, that allowing the exercise of supplemental jurisdiction over Voda's foreign patent infringement claims furthers the harmonization goals underlying the treaties. Regardless of the strength of the harmonization trend, however, we as the U.S. judiciary should not unilaterally decide either for our government or for other foreign sovereigns that our courts will become the adjudicating body for any foreign patent with a U.S. equivalent "so related" to form "the same case or controversy." <u>Cf.</u> <u>F. Hoffman-La Roche Ltd. v. Empagran S.A.</u>, 542 U.S. 155, 166-67 (2004) (finding "no convincing justification" for providing such subject matter jurisdiction in antitrust context). Permitting our district courts to exercise jurisdiction over infringement claims based on foreign patents in this case would require us to define the legal boundaries of a property right granted by another sovereign and then determine whether there has been a trespass to that right.

Based on the international treaties that the United States has joined and ratified as the "supreme law of the land," a district court's exercise of supplemental jurisdiction could undermine the obligations of the United States under such treaties, which

05-1238

20

therefore constitute an exceptional circumstance to decline jurisdiction under § 1367(c)(4).  Accordingly, we must scrutinize such an exercise with caution.[9]

> b.    *Comity and relations between sovereigns*

"Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."  Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S.D. of Iowa, 482 U.S. 522, 543 n.27 (1987).

> Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.  But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

Id. (quoting Hilton v. Guyot, 159 U.S. 113, 163-64 (1895)) (quotation marks omitted) (emphasis added).  Courts must also bear in mind that "whatever laws are carried into execution, within the limits of any government, are considered as having the same effect every where, so far as they do not occasion a prejudice to the rights of the other governments, or their citizens."  Id. (quoting Emory v. Grenough, 3 U.S. (3 Dall.) 369, 370 (1797) (quotation marks and citation omitted)) (emphasis added).  Société provides us with these considerations to guide our determination of whether an exercise of

---

[9]    In addition, even assuming that Cordis U.S. is responsible for manufacturing the allegedly infringing devices in Juarez, Mexico, and selling them in foreign countries, the dissent's assertion that we could adjudicate a foreign patent infringement action and enforce the judgment against Cordis U.S. for its foreign manufacturing and foreign sales, Dissent 1 n.1, would be an end-run around the territorial limits of 35 U.S.C. § 271.  See Dowagiac, 235 U.S. at 650 ("The right conferred by a patent under our law is confined to the United States and its territories." (citation omitted)); cf. AT&T Corp. v. Microsoft Corp., 414 F.3d 1366 (Fed. Cir. 2005), cert. granted, 127 S. Ct. 467 (2006).

05-1238

comity supports extending or declining jurisdiction over the foreign patent infringement claims at issue here.  See id. at 543-44 (stating that international comity concept in evidence-gathering context requires particularized analysis of facts and sovereign interests).

In this case, these considerations of comity do not support the district court's exercise of supplemental jurisdiction over Voda's foreign patent infringement claims. First, Voda has not identified any international duty, and we have found none, that would require our judicial system to adjudicate foreign patent infringement claims.  As discussed supra Part III.A.2.a, while the United States has entered into the Paris Convention, the PCT, and the Agreement on TRIPS, nothing in those treaties contemplates or allows one jurisdiction to adjudicate the patents of another.  Second, as discussed infra Part III.A.2.d, Voda has not shown that it would be more convenient for our courts to assume the supplemental jurisdiction at issue.  Third, with respect to the rights of our citizens, Voda has not shown that foreign courts will inadequately protect his foreign patent rights.  Indeed, we see no reason why American courts should supplant British, Canadian, French, or German courts in interpreting and enforcing British, Canadian, European, French, or German patents.  Cf. Empagran, 542 U.S. at 165 (finding no reason to allow "American [antitrust] law [to] supplant, for example, Canada's or Great Britain's or Japan's own determination about how best to protect Canadian or British or Japanese customers from anticompetitive conduct").

Fourth, assuming jurisdiction over Voda's foreign patent infringement claims could prejudice the rights of the foreign governments.  None of the parties or amicus curiae have demonstrated that the British, Canadian, French, or German governments

are willing to have our courts exercise jurisdiction over infringement claims based on their patents. Cf. 28 U.S.C. § 1338(a) (granting federal courts exclusive jurisdiction of claims relating to U.S. patents).

In addition, the local action doctrine informs us that exercising supplemental jurisdiction in this case appears to violate our own norms of what sovereigns ordinarily expect. Courts derived the local action doctrine from the distinction between local and transitory actions beginning with Livingston v. Jefferson, written by Justice John Marshall riding Circuit. 15 F. Cas. 660 (C.C.D. Va. 1811). In Livingston, the plaintiff sued in a Virginia court for trespass to land located in Louisiana. The court dismissed the action, holding that it could be brought only in a Louisiana court. The Supreme Court subsequently held that "an action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action, and can only be brought within the State in which the land lies." Ellenwood v. Marietta Chair Co., 158 U.S. 105, 107 (1895). The Court concluded that a federal court sitting in another state had no jurisdiction to hear the trespass claim. Id. In short, the local action doctrine served to prevent courts from adjudicating claims for trespass or title to real property.

The territorial limits of the rights granted by patents are similar to those conferred by land grants. A patent right is limited by the metes and bounds of the jurisdictional territory that granted the right to exclude. See Dowagiac Mfg. Co. v. Minn. Moline Plow Co., 235 U.S. 641, 650 (1915) ("The right conferred by a patent under our law is confined to the United States and its territories." (citation omitted)); NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1313 (Fed. Cir. 2005) ("The territorial reach of section 271 is limited. Section 271(a) is only actionable against patent infringement that

occurs within the United States." (citations omitted)). Therefore, a patent right to exclude only arises from the legal right granted and recognized by the sovereign within whose territory the right is located. It would be incongruent to allow the sovereign power of one to be infringed or limited by another sovereign's extension of its jurisdiction. Therefore, while our Patent Act declares that "patents shall have the attributes of personal property," 35 U.S.C. § 261, and not real property, the local action doctrine constitutes an informative doctrine counseling us that exercising supplemental jurisdiction over Voda's foreign patent claims could prejudice the rights of the foreign governments.

Therefore, the four considerations enunciated by the Supreme Court in Société demonstrate that extending our jurisdiction through § 1367(a) in this case could undermine "the spirit of cooperation" underlying the comity doctrine. Because the purpose underlying comity is not furthered and potentially hindered in this case, adjudication of Voda's foreign patent infringement claims should be left to the sovereigns that create the property rights in the first instance.

In addition, as a rule of statutory construction, the Supreme Court "ordinarily construes ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations." Empagran, 542 U.S. at 164; cf. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 60 (1978) ("[A] proper respect both for tribal sovereignty itself and for the plenary authority of Congress in [civil actions against tribal officers] cautions that we tread lightly in the absence of clear indications of legislative intent."). As discussed, there is no explicit statutory direction indicating that the district courts should or may exercise supplemental jurisdiction over claims arising under foreign patents, and

the Paris Convention, PCT, and Agreement on TRIPS neither contemplate nor allow the extraterritorial jurisdiction of our courts to adjudicate patents of other sovereign nations. We have also noted the territorially limited nature of patent rights. See Pellegrini v. Analog Devices, Inc., 375 F.3d 1113, 1117 (Fed. Cir. 2004) ("[As] the U.S. Supreme Court explained nearly 150 years ago in Brown v. Duchesne, 60 U.S. (19 How.) 183, 15 L. Ed. 595 (1857), . . . the U.S. patent laws 'do not, and were not intended to, operate beyond the limits of the United States.'"); Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("'[T]he right conferred by a patent under our law is confined to the United States and its territories, and infringement of this right cannot be predicated on acts wholly done in a foreign country.'" (quoting Dowagiac, 235 U.S. at 650)). Therefore, the principle that we should "avoid unreasonable interference with the sovereign authority of other nations" applies analogously here. Empagran, 542 U.S. at 164.

We would risk such interference by exercising supplemental jurisdiction over Voda's foreign patent infringement claims. Patents and the laws that govern them are often described as complex. Indeed, one of the reasons cited for why Congress established our court was because it "felt that most judges didn't understand the patent system and how it worked." Judge Pauline Newman, Origins of the Federal Circuit: The Role of Industry, 11 Fed. Cir. B.J. 541, 542 (2002). As such, Cordis U.S. and one of the amicus curiae assert, and Voda does not dispute, that the foreign sovereigns at issue in this case have established specific judges, resources, and procedures to "help assure the integrity and consistency of the application of their patent laws." Therefore, exercising jurisdiction over such subject matter could disrupt their foreign procedures.

By analogy, Congress unified our patent jurisprudence by creating the Federal Circuit and granting exclusive jurisdiction of appeals on patent claims. 28 U.S.C. § 1295. Foreign courts exercising jurisdiction over claims based on U.S. patents would destroy Congress's intent to foster uniformity and to preclude forum shopping. Cf. Empagran, 542 U.S. at 168-69 (finding in antitrust context that "legally and economically technical nature of [examining foreign law, compared with American law] means lengthier proceedings, appeals, and more proceedings-to the point where procedural costs and delays could themselves threaten interference with a foreign nation's ability to maintain the integrity of its own antitrust enforcement system").

Accordingly, comity and the principle of avoiding unreasonable interference with the authority of other sovereigns dictate in this case that the district court decline the exercise supplemental jurisdiction under § 1367(c).

### c. Judicial economy

Because of our lack of institutional competence in the foreign patent regimes at issue in this case, more judicial resources could be consumed by the district court than the courts of the foreign patent grants. Indeed, adjudication of Voda's British, Canadian, European, French, and German patent claims may substantially predominate his U.S. patent claims. Cf. § 1367(c)(2) (stating that district courts may decline exercising supplemental jurisdiction where "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction").

In addition, the likelihood of jury confusion in applying different patent regimes could result in separate trials. Cf. Gibbs, 383 U.S. at 726 ("Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury

confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed.Rule Civ.Proc. 42(b)."). Therefore, exercising supplemental jurisdiction in this case could result in at least the same magnitude of litigation as Voda filing patent infringement claims in each respective sovereign's court.

Voda and one amicus curiae point out that consolidated multinational patent adjudication could be more efficient. While there may be merit in that argument, no international treaty establishes full faith and credit, nor have we found any analogous agreement that would require foreign countries to recognize or obligate the enforcement of our judgments regarding foreign patents. In this case, Voda's amended complaint asks not only for damages and fees but also for "such other and further relief as this Court deems just and proper." Therefore, the additional time and resources required by our courts may result in incomplete adjudication of the claims, prolonging and extending the expenditures by all.

The district court did not articulate any such judicial economy analysis, and accordingly, this absence of analysis supports our finding that the district court abused its discretion in this case.

### d. Convenience

Similarly, factors of convenience may provide additional reasons to decline exercising supplemental jurisdiction in this case. Again, the district court did not articulate any such analysis, further supporting our finding that it abused its discretion.

We note that the Supreme Court does not appear to have defined convenience in the context of discretionary exercises of supplemental jurisdiction. While the parties have structured their arguments in this case around forum non conveniens, they have

provided no case law justifying incorporation of that doctrine into the consideration of convenience under § 1367(c). Cf. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 248 n.13 (1981) (noting that Supreme Court first indicated that motions to dismiss on grounds of forum non conveniens could be made in federal diversity actions in Williams v. Green Bay & W.R. Co., 326 U.S. 549 (1946)); Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC, 155 F.3d 603, 606 (2d Cir. 1998) (stating that Supreme Court explicitly recognized applicability of forum non conveniens in federal question cases in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)). Where the doctrine does not duplicate other factors already considered, however, forum non conveniens is a useful doctrine to reference. For example, on one hand, the cost of obtaining and translating evidence, especially experts in foreign patent law pursuant to Fed. R. Civ. P. 44.1 (governing determination of foreign law), cuts against exercising supplemental jurisdiction. On the other hand, deferring to the plaintiff's choice of forum would support such an exercise.

   e.   *Fairness*

Lastly, the act of state doctrine may make the exercise of supplemental jurisdiction over foreign patent infringement claims fundamentally unfair. As "a 'principle of decision binding on federal and state courts alike,'" the act of state doctrine "requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400, 406, 409 (1990) (citation omitted). In this case, none of the parties or amicus curiae have persuaded us that the grant of a patent by a sovereign is not an act of state. But see Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1293-94 (3d Cir. 1979) (stating that Third Circuit was "unable to accept the proposition

that the mere issuance of patents by a foreign power constitutes [] an act of state" under abstention analysis). Therefore, assuming arguendo that the act of state doctrine applies, the doctrine would prevent our courts from inquiring into the validity of a foreign patent grant and require our courts to adjudicate patent claims regardless of validity or enforceability. Given the number of U.S. patent cases that we resolve on validity or enforceability as opposed to infringement grounds, exercising such jurisdiction could be fundamentally unfair to the alleged infringer where, as one amicus curiae points out, "the patent is in fact invalid and the defendant would be excused from liability on that basis in a foreign forum." Voda has not shown in this case that the validity of the foreign patents would not be at issue. Indeed, Cordis U.S. asserts otherwise.

> *f.* *Section 1367(c) abuse of discretion*

In summary, several reasons in this case would compel the district court to decline supplemental jurisdiction under § 1367(c): limitations imposed by treaties that are the "supreme law of the land" and considerations of comity, judicial economy, convenience, and fairness. The district court undertook none of this analysis. Accordingly, we hold that the district court abused its discretion in exercising supplemental jurisdiction.

As with the § 1367(a) factors of Mars, this is a non-exhaustive list, not a test, for district courts to consider under § 1367(c). In addition, we emphasize that because the exercise of supplemental jurisdiction under § 1367(c) is an area of discretion, the district courts should examine these reasons along with others that are relevant in every case, especially if circumstances change, such as if the United States were to enter into a new international patent treaty or if events during litigation alter a district court's

conclusions regarding comity, judicial economy, convenience, or fairness. However, "[d]iscretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike . . . a page of history is worth a volume of logic." eBay, 126 S. Ct. at 1841-42 (Roberts, C.J., concurring) (quotation marks and citations omitted).

## B.    **Alternate Statutory Basis**

The parties also dispute on appeal whether diversity jurisdiction under § 1332 provides an alternate and independent basis for the district court to hear Voda's claims of foreign patent infringement. However, Voda has not pled diversity, and it is not clear whether the district court would permit such a pleading to be made at this stage in the proceedings. We therefore decline to decide whether the district court could properly exercise jurisdiction based in diversity.

## C.    **Abstention**

The "district courts may be obligated not to decide" claims arising under foreign patents "where one of the abstention doctrines articulated by [the Supreme] Court applies." Chicago, 522 U.S. at 174. Abstention doctrines "embody the general notion that federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, for example where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." Id. (quotation marks and citation omitted). Because we resolve the district court's jurisdiction on statutory grounds, we do not discuss or make any holdings regarding abstention here.

05-1238

30

## IV.  CONCLUSION

We vacate the order of the district court granting Voda leave to amend his complaint to add infringement claims based on foreign patents pursuant to the supplemental jurisdiction statute 28 U.S.C. § 1367 and remand for further proceedings consistent with this opinion.

<u>VACATED</u> and <u>REMANDED</u>

No costs.

# United States Court of Appeals for the Federal Circuit

05-1238

JAN K. VODA, M.D.,

Plaintiff-Appellee,

v.

CORDIS CORPORATION,

Defendant-Appellant.

NEWMAN, <u>Circuit Judge</u>, dissenting.

I respectfully dissent, for the question here presented is not related to federalism and the federal/state relationship, or to pendent jurisdiction of state law issues; nor are disputes about foreign patents so unique as to call up the other theories collected by the panel majority to support this ousting of United States parties from access to United States courts. The certified question is concerned solely with the authority of a United States court, having personal jurisdiction of the parties, to exercise its discretion to accept the

amended complaint concerning the foreign patents corresponding to the United States patent in suit.[1]

A foreign country is not a "state" in the constitutional context, and the judicial application of foreign law plays no role in the jurisdictional balance represented by federalism. The rules governing federal jurisdiction of supplemental state claims are irrelevant to whether a United States court has the authority and can exercise its discretion to decide questions that require the application of foreign law. Courts in the United States have always had the authority to decide questions that require application of foreign law. Federal Rule of Civil Procedure 44.1 ("Determination of Foreign Law") provides procedural guidance. In Printz v. United States, 521 U.S. 898 (1997) the Court, comparing the judicial and other branches of government, remarked that courts "applied the law of other sovereigns all the time." Id. at 907. Yet the panel majority holds that a United States court

---

[1] Contrary to the statements of the panel majority, my position is not that the district court has or needs personal jurisdiction of Cordis' foreign subsidiaries; my premise is that the district court has authority and power to provide Voda with the requested relief through Cordis US, the manufacturer and provider of the accused catheters for all five countries. Further, both the Bonzel and Mars cases, flagged by the majority, were discretionary decisions. In Bonzel the contract was made in a foreign country between foreign nationals under foreign law, and was declined on the discretionary ground of forum non conveniens. In Mars the count against a Japanese company was declined on the discretionary ground that the kinds of patents and the structure of the devices differed significantly between the United States and Japan.

cannot do so, in its sound discretion, when the issue concerns patents. Thus this court rules that the district court is precluded from considering the issues concerning the four foreign counterparts of the United States patent that is in suit between these parties.

The district court had agreed to receive the amended complaint. Our role, at this pleading stage, is to determine whether that action is supportable. My colleagues hold that the district court abused its discretion in exercising supplemental jurisdiction of the foreign patent issues, indeed holding that the district court has no discretion to accept this amended complaint because it involves foreign patents. I cannot agree. It is inappropriate for the Federal Circuit to create this unique exception to the authority of American courts to resolve controversies that require the application of foreign law.

Access of a nation's citizenry to dispute resolution in the nation's courts is fundamental to a nation ruled by law. This court's new rule carves an inapt exception into judicial authority, judicial obligation, and judicial discretion. Such special treatment of patent issues is flawed as a matter of precedent, procedure, and policy.

### Courts Routinely Apply Foreign Law

Precedent illustrates myriad situations in which the courts have determined and applied foreign law, and also illustrates those few situations in which a court has declined to resolve a specific foreign-based issue. Today's extreme barrier to exercise of the district court's discretion when foreign patents are involved stands alone among the vast variety of causes in which such determinations have been made.

United States courts have determined and applied foreign commercial law, foreign property law, foreign inheritance law, foreign citizenship law, foreign copyright law, foreign trademark law, foreign liability and negligence law, and other foreign law as appropriate to

05-1238

3

resolution of the dispute between the parties before the court. The principle is that a court should apply the same law that would be applied in the nation where the event occurred, or the law having the most significant relationship to the event in dispute. For example, in Smith v. Condry, 42 U.S. (1 How.) 28 (1843), concerning liability for a collision between American vessels in the port of Liverpool, the Court held that the British statutes should be applied to determine fault, and that liability and damages should be decided under British law. In Nashua Savings Bank v. Anglo-American Land, Mortgage & Agency Co., 189 U.S. 221, 230 (1903) the Court discussed various methods of proving foreign law, then viewed as a question of fact, in an action by an English corporation to recover an assessment on its capital stock; the Court explained that: "By subscribing to stock in a foreign corporation, defendant subjects itself to the laws of such foreign country in respect to the powers and obligations of such corporation." In Uebersee Finanz-Korporation, A.G. v. McGrath, 343 U.S. 205 (1952) the Court held that it was appropriate to determine property ownership of a usufructuary under German law, predicate to application of the Trading with the Enemy Act.

A sampling of recent cases yields further illustration of judicial authority and dispute-resolution obligation when foreign law is involved: In Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co., 295 F.3d 59 (1st Cir. 2002) the court observed that the district court may apply United States copyright law, German contract law, and Austrian inheritance law, to resolve all of the issues in the case. In Abogados v. AT&T, Inc., 223 F.3d 932 (9th Cir. 2000) the court applied California choice of law analysis to hold that the law of Jalisco, Mexico should be applied by the district court to an issue of tortious interference with a contract made in Mexico between the Mexican plaintiffs and the Mexican subsidiary of AT&T. In Tschira v. Willingham, 135 F.3d 1077 (6th Cir. 1998) the

05-1238

4

court applied German law to decide whether a letter created a fiduciary duty, and then applied Tennessee law to a fraudulent misrepresentation concerning property in Tennessee. In Curley v. AMR Corp., 153 F.3d 5, 12 (2nd Cir. 1998) the court compared the laws of Mexico and New York as to various torts including false imprisonment and negligence, and stated its "agreement with the concept that appellate courts, as well as trial courts, may find and apply foreign law"; the court held that foreign law should be applied to the acts that occurred in Mexico unless "violative of fundamental notions of justice and prevailing concepts of good morals." See generally 9 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure §§2444-446 at 644-58 (2d ed. 1995) (discussing application of foreign law in federal courts).

In Dorman v. Emerson Electric Co., 23 F.3d 1354 (8th Cir. 1994) the court applied the "most significant relationship" test to determine that Canadian law applied to a personal injury claim against a product that was designed in Missouri, manufactured in Taiwan, and sold and used in Canada. In Indasu Int'l, C.A., v. Citibank, N.A., 861 F.2d 375, 379 (2nd Cir. 1988) the court determined the applicable Ecuadorian law of contracts and guaranty, then applied that law to the obligation between the United States guarantor and a Panamanian corporation as to a contract to be performed in Ecuadorian waters. In Mathews v. ABC Television, Inc., 776 F. Supp. 821 (S.D.N.Y. 1991) a Kenyan film-maker sued ABC Television in New York for injuries by a rhinoceros in Kenya, alleging that an ABC employee's reckless conduct caused the attack; the district court applied the Kenyan comparative negligence law and case law of the East African Court of Appeals. In In re Houbigant, Inc., 914 F. Supp. 964 (S.D.N.Y. 1995) the district court applied various provisions of the Canadian Trade-Marks Act, and also applied the laws of the Province of

05-1238

5

Quebec and the State of New York to the interpretation of a licensing arrangement. In Armstrong v. Virgin Records, Ltd., 91 F. Supp.2d 628 (S.D.N.Y. 2000) the district court exercised jurisdiction of the United States and foreign copyright claims, stating that "there is no principled reason to bar, in absolute fashion, copyright claims brought under foreign law for lack of subject matter jurisdiction," and that "subject matter jurisdiction over any claims properly arising under United States copyright law, potentially allowing the Court to exercise pendent jurisdiction over claims arising under foreign law." Id. at 637.

As for cases involving foreign patents, in Ortman v. Stanray, 371 F.2d 154 (7th Cir. 1967) the court approved the exercise of supplemental jurisdiction of counts concerning the corresponding Canadian, Brazilian, and Mexican patents. In Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1369 (Fed. Cir. 1994), this court declined to decide the Japanese patent issues, explaining that the accused devices, the scope and class of the claims, and the charges of infringement were different in Japan and the United States. In Medigene AG v. Loyola Univ. of Chicago, No. 98 C 2026, 2001 WL 1636916 (N.D. Ill. Dec. 19, 2001) the district court declined to dismiss the issue of inventorship of foreign patent applications, stating that "[Mars] makes clear that in appropriate circumstances Section 1367 permits exercise of supplemental jurisdiction over a claim for infringement of a foreign patent." Id. at *1. In Forbo-Giubiasco S.A. v. Congoleum Corp., 516 F. Supp. 1210 (S.D.N.Y. 1981), the court observed that "[a] finding against Congoleum on this point [inequitable conduct in obtaining the foreign patents] would affect only the rights between Congoleum and Giubiasco, not Congoleum's foreign patent rights generally." Id. at 1218. In Distillers Co. v. Standard Oil Co., 150 USPQ 42 (N.D. Ohio 1964), in a dispute involving various patents on the manufacture of acrylonitrile, the court stated that "It cannot be doubted, nor does the

05-1238

6

plaintiff question, that this Court is empowered to consider claims arising under foreign patents."  Id. (citing Aluminum Co. of Am. v. Sperry Products, Inc., 285 F.2d 911 (6th Cir. 1950) and Nat'l Latex Products Co. v. Sun Rubber Co., 274 F.2d 224 (6th Cir. 1960)).

In no case did the court hold that it had no power or authority to receive the foreign issue, reciting various reasons in a few situations where the court declined the foreign issue.  An example is Bonzel v. Pfizer, Inc., 439 F.3d 1358 (Fed. Cir. 2006), where this court sustained the district court's discretion in dismissing, on the ground of forum non conveniens, an action that required application of German contract law to interpret a patent license agreement that was made in Germany between a German national and the Swiss subsidiary of a United States company.  Other cases are: Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645 (2nd Cir. 1956) ("the district court did not abuse its discretion in declining to exercise its jurisdiction over that portion of the case arising in Canada and governed by Canadian trade-mark law"); Torah Soft Ltd. v. Drosnin, 136 F. Supp.2d 276 (S.D.N.Y. 2001) (district court declined to exercise jurisdiction over foreign copyright claims because the United States copyright claim had been dismissed); Berkshire Furniture Co. v. Glattstein, 921 F. Supp. 1559, 1562 (W.D. Ky. 1995) (district court stated that on principles of international comity it was "disinclined to decide issues related to the designs that arise under U.K. and Malaysian law"); Packard Instrument Co. v. Beckman Instruments, Inc., 346 F. Supp. 408 (N.D. Ill. 1972) (district court declined to resolve patent infringement in nine foreign countries, stating that the patentee could obtain effective relief by enforcement of its United States patent).  In none of these cases was there any assertion of judicial incapacity to resolve the foreign issues, or of any prohibition on the exercise of discretion to accept the case.

05-1238

The district court herein, in exercising its discretion to accept the Voda amended complaint, explained that the factual situation in Ortman, supra, was more akin to this case than the factual situation in Mars, supra. In Ortman the court had accepted the foreign patent issues, stating that "all of the actions of defendant of which complaint is made are the result of defendant doing similar acts both in and out of the United States," 371 F.2d at 158, whereas in Mars, citing the differences in the patents and the products this court held that the Japanese issues would more appropriately be resolved by a Japanese court. In contrast to the case-specific analyses in precedent, my colleagues now hold that it would always be an abuse of discretion for the district court to decide foreign patent issues, unless some sort of new treaty is produced. However, it is inappropriate to compel the district court to decline the adjudicative authority available in all other areas of law.

In explaining this unique inroad on discretion when foreign patents are involved, my colleagues rely heavily on the criteria of supplemental jurisdiction as codified in 28 U.S.C. §1367. However, judicial authority to determine and apply foreign law does not require that the foreign issue is supplemental to a domestic issue. Further, even if the criteria of §1367 are applied they support, rather than negate, the district court's decision herein.

Judicial authority to decide questions of foreign law is not a matter of the federal/state relationship codified at 28 U.S.C. §1367. Nonetheless, the elaboration in United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) concerning federal supplemental jurisdiction of state law causes that have "a common nucleus of operative fact" is a useful analogy to the Voda/Cordis situation, for the "considerations of judicial economy, convenience and fairness to litigants" that are served by supplemental jurisdiction, 383 U.S. at 726, are relevant to considerations of the exercise of judicial

05-1238

8

discretion. If these criteria are applied they reinforce, rather than negate, the district court's exercise of discretion to accept Voda's amended complaint.

The principles of supplemental jurisdiction as applied to federal/state issues, 28 U.S.C. §1367, weigh on the side of the exercise of jurisdiction absent compelling reason:

> §1367(a). Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . .

A district court may decline to exercise supplemental jurisdiction over such a related claim:

> §1367(c). The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(All emphases added). Although my colleagues fault the district court for "not making a Section 1367(c) analysis," this is an inapt criticism, for the district court did not decline jurisdiction by invoking §1367(c); instead, the court applied the principle of §1367(a) and accepted the claim, exercising its authority and recognizing its dispute-resolution obligation. Indeed, in Exxon Mobil Corp. v. Allapattah Services, Inc., 125 S. Ct. 2611, 2620 (2005) the Court counseled against unduly narrowing the application of §1367(a). The Federal Circuit in Mars applied the principles of §1367(c) and held that the Japanese patent issues should be litigated in Japan because the "common nucleus of operative fact" required by Gibbs was not present, but this court also stated that §1367(c) "reaffirms that the exercise of supplemental jurisdiction is within the discretion of the district court." 24 F.3d at 1374.

05-1238

9

The court's ruling today essentially eliminates this discretionary option in foreign patent cases; the court makes no mention of the common nucleus of operative facts among Voda's United States and foreign patent issues, and does not review the district court's ruling on the ground of abuse of discretion. In eBay Inc. v. MercExchange L.L.C., 126 S. Ct. 1837 (2006) the Court discouraged the carving out of an exception uniquely for patent cases, and required that the equitable discretion of the district court be as available in patent cases as in other cases. The panel majority strays from precedent, policy, and prudence, in ruling that the discretionary authority of the district court cannot or should not be exercised to resolve foreign patent disputes between parties properly before the court. My colleagues' reliance on the rules of supplemental jurisdiction does not support their restraint on this exercise of discretion.

I respond to the several other justifications offered in the majority opinion, for they also are flawed:

***The Facts as Pled Support the District Court's Action***

The district court followed the Seventh Circuit's decision in Ortman, the closest precedent. The commonality of issues in the five countries of the Voda patents, including the United States, was before the district court. The accused catheter is the same in all five countries; it is manufactured by Cordis Corporation in a single plant, initially at Miami Lakes, Florida and now in Mexico. Cordis manages the Mexican plant and arranges for shipment to the Cordis companies in the five countries where infringement is charged, viz., Cordis Corporation (US), Cordis S.A. (France), Cordis G.m.b.H (Germany), Cordis UK Limited, and Cordis in Canada. All of the Cordis companies are related to the Johnson & Johnson Company.

05-1238

10

The patents in the five countries show that they are of common origin. A PCT (Patent Cooperation Treaty) application, based on the United States application, was filed in the Canadian and European Patent Offices. All of the patents have identical drawings, and the specifications are the same with additional text in the United States. The European patent application was filed and prosecuted in English, and the French and German patents are translations of the European patent. The British, French, and German patents have the specification and claims of the European patent grant.[2]

Cordis says in its brief that there are differences among the patents, although no details were provided and differences are not apparent. But accepting this statement, I doubt that any differences are beyond the understanding of a United States court, with appropriate explanation if needed. Cordis also says that it intends to challenge the validity of all of the patents based on a reference that was not cited in any examination; it is not explained why a new reference cannot be considered as to not only the United States patent, but the foreign patents.

My colleagues, supporting their ruling that the district court should not and can not in its discretion accept cases that raise issues of foreign patent validity and infringement, state that "more judicial resources could be consumed by the district court than the courts of the foreign patent grants." Maj. Op. at 26. This reason is unsupported by the pleaded facts.

---

2       As for the majority's challenge to our knowledge of the content of the foreign-language patents, the record contains all five patents, and states, without challenge, that the German and French patents are translations of the European patent (the French patent is headed "Traduction de Brevet Europeen").

05-1238

11

Nor should a court ignore the consumption of private as well as judicial resources in duplicative litigation between the same parties in five countries, in three languages, with five sets of lawyers and the other trappings and burdens of trial.

My colleagues unfairly criticize the district court for not making any findings regarding the differences between the domestic and foreign patents, and equally unfairly criticize the absence of expert analysis of the foreign patent laws. It is surely inappropriate to criticize the judge for not making findings or taking evidence at the pleading stage. On a motion to amend the pleadings the court shall accept the well-pled allegations, Fed. R. Civ. P. 12(b)(6), and indeed no challenge to the premises has been presented.

Discretionary authority is of broad scope, as is the judicial obligation to resolve disputes between litigants who are properly before the court. The district court's action reflects the "balance of conveniences," Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n.23 (1981), for the court could have considered the convenience to Dr. Voda, a citizen of Oklahoma, and balanced it against the convenience of multiple litigation in foreign countries. Cordis does not argue that it would be more "convenient" for it to litigate in five countries instead of one.

Although a district court may decline to exercise its jurisdiction when it appears that the convenience of the parties and the court and the interests of justice are such that the action should be tried in another forum, id. at 249-50, this determination is committed to the sound discretion of the district court. See, e.g., Leetsch v. Freedman, 260 F.3d 1100, 1102-03 (9th Cir. 2001) ("When we review a forum non conveniens determination, we give less deference to a foreign plaintiff's choice of a United States forum than to a domestic plaintiff's choice" and "[w]hether to dismiss an action on forum non conveniens grounds

05-1238

12

require the district court to consider the availability of an adequate alternative forum, and then to consider whether several 'private' and 'public' interest factors favors dismissal."). Cordis has the burden of persuasion that the district court abused its discretion in choosing to receive the amended complaint. Our appellate role is to determine whether Cordis has met this burden and has shown that the district court's exercise of discretion is not sustainable in this case; it is an improper appellate ruling to remove that discretion.

### *Complexity of Law or Fact*

I turn to the matter of complexity, for this aspect is also pressed in the panel majority's reasoning. My colleagues propose that in view of the complexities that may arise in connection with foreign patents, United States courts should not or can not exercise their discretion to enter the arena. Such a sweeping elimination of judicial authority contravenes the fundamentals of judicial responsibility, for judges cannot avoid cases because they may be complex. The complexity of patent law does not evict the district court from its discretionary authority.

My colleagues appear to believe that each nation's patent on Dr. Voda's invention covers a different scope of subject matter. The proposition that the scope of counterpart patents, particularly those having identical claims, will usually vary significantly will come as a surprise and shock to the holders of literally millions of counterpart patents. In this case all five patents are of common origin and text, and the patents in Great Britain, France, and Germany are identical as granted by the European Patent Office. It is well recognized that most inventions receive consistent protection under the patent laws of the major industrial

05-1238

nations. The few areas of difference are well understood by practitioners.[3] The international structure of patent laws, patent practitioners, and patent treaties, is bottomed on this commercial premise. International business depends on this expectation and reality.

There is no assertion that the Voda catheter is so complicated as to test the nuances of comprehension and law. The panel majority states that its concern about "construing" different claims or even the same claims in different countries, and that expert testimony might be required. Expert testimony is not unusual in patent litigation, and experts on the meaning and scope of the claims in these countries are undoubtedly available if needed. See Fed. R. Civ. P. 44.1.[4]

"The parties, therefore, carry the burden of proving foreign law; where they do not do so, we 'will ordinarily apply the forum's law.'" Ferrostaal, Inc. v. M/V Sea Phoenix, 447 F.3d

---

3      Voda's catheter is a mechanical device, and does not raise new policy issues based on evolving areas of technology, such as the role of patents on computer software or genetic products.

4      **Rule 44.1. Determination of Foreign Law.** A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

212, 216 (3rd Cir. 2006) (quoting <u>Bel-Ray v. Chemrite Ltd.</u>, 181 F.3d 435, 440 (3d Cir.1999)); <u>Banco de Credito Industrial, S.A. v. Tesoreria Gen.</u>, 990 F.2d 827, 836 (5th Cir. 1993) (analyzing Spanish and French law and holding that "[w]hen the parties have failed to conclusively establish foreign law, a court is entitled to look to its own forum's law in order to fill in any gaps.").

We do not know whether the accused Cordis device is a simple copy of the Voda invention or whether it embodies significant changes; that is, we do not know whether claim "construction," under any law, will be necessary. As for foreign languages, about which my colleagues also express concern, the Canadian and British patents are in English, as is the European patent of which the German and French patents are translations. The prosecution history in the European Patent Office is in English, as of course in Canada and the United States. It surely is not apparent that multiple litigation of the same issues in five countries and three languages is likely to be more economical of judicial time and litigation expense, and more likely to achieve a correct and just result, than resolving all of the issues before one judge in one case and one language. This aspect cannot serve to negate the district court's exercise of discretion to receive these issues.

My colleagues also express concern about "jury confusion" when proving infringement of patents written in other languages and under foreign law. I take note that the Uniform Interstate and International Procedure Act, Article IV §4.03, states that "the court, not the jury, shall determine foreign law." <u>See</u> <u>also</u> Fed. R. Civ. P. 44.1. It need not be ignored that the extent to which the question of infringement is presented to a jury is diminished in the United States since the advent of the <u>Markman</u> practice; and whether a

05-1238

15

corresponding foreign question under the laws of a country that does not have a jury system would avoid any Seventh Amendment obligation is not here at issue.

The panel majority also states its concern that issues of foreign patents may not be correctly decided by a United States court. Undoubtedly this concern fits all of the areas in which courts have applied foreign law, and could be a factor in a district court's determination of whether to exercise jurisdiction in a particular case. However, such a discretionary determination is quite different from the panel majority's ruling that discretion should not be exercised to accept and decide foreign patent issues.

My colleagues propose that permitting exercise of the district court's discretion to accept jurisdiction "could be fundamentally unfair to the alleged infringer." Indeed, fairness is an important aspect of discretionary rulings, and fairness to both sides must be considered. The panel majority does not explain its apparent balance of fairness in its holding that the alleged infringer is always more disadvantaged and can only be sued in the situs of the infringement. Such considerations would have evicted American courts in many areas of law, as in the representative cases cited earlier in this opinion. This concern does not warrant treating patent cases differently from all other causes of action.

In this case, the district court was willing to take on the foreign issues. Perhaps the district court gave weight to the fact that the United States patent was being litigated anyway, on the same grounds and against the same device that is at issue in all five countries. Perhaps the court gave weight to equitable considerations, for they are always relevant to judicial discretion. None of the aspects here raised supports departing from the authority of courts to resolve disputes between parties that are properly before them, whether or not foreign law is involved. The fundamental question now presented is whether

05-1238

16

a district court will be permitted to retain its judicial authority, or will this specific area be uniquely limited, whatever the position of the district court as to its discretion and its obligation.

### The Local Action Doctrine

My colleagues also refer to the "local action" doctrine as barring the district court's jurisdiction of foreign patent issues. This "doctrine" arose in United States jurisprudence in the early days of the Republic, clarifying the jurisdiction of the state courts with respect to each other. In Livingston v. Jefferson, 15 F. Cas. 660 (C.C.D. Va. 1811), the court recognized the common law concept of local action and established that an action involving real property can be brought only within the state of the United States where the land is located. Such rulings have no relation to whether a United States court can resolve a dispute between persons personally before the tribunal by applying the law of a foreign country, whatever the issue. See generally 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 2d §3822, at 451-54 (2007). It is obscure how this "doctrine" supports my colleagues' ruling that a United States court cannot resolve disputes that raise questions of foreign patent law.

### The Act of State Doctrine

The panel majority also invokes the "Act of State" doctrine as justification for barring the district court from choosing to decide the issues of Voda's foreign patents. The theory appears to be that the grant of a foreign patent is a governmental act of state, and thereby untouchable by a United States court. Thus the panel majority proposes that the district court's discretionary act would "prejudice the rights of other governments" to decide the

05-1238

17

validity and enforceability of their patents. That proposition is unsupported. In <u>Mannington Mills, Inc. v. Congoleum Corp.</u>, 595 F.2d 1287, 1293-94 (3rd Cir. 1979) the court rejected the theory that "the mere issuance of patents by a foreign power constitutes either an act of state, as that term has developed under case law, or an example of governments' compulsion." In <u>Forbo-Giubiasco</u>, 516 F. Supp. at 1217 the court explained that "it cannot be said that a determination by an American court that a private company failed to present relevant information to a foreign patent office could interfere with our government's conduct of foreign affairs."

In <u>Banco National de Cuba v. Sabbatino</u>, 376 U.S. 398 (1963) the Court explained that "[t]he act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory," and that the doctrine precludes judicial determination of the legality of acts of foreign states within their own territories which might embarrass the executive department in its conduct of foreign affairs. <u>Id.</u> at 427-49. Not every governmental action is an act of state, and not every ministerial activity carries the political and international implications of that usage.

Whether a particular governmental action is properly viewed as an act of state has been explained in a variety of contexts; the common thread is whether the issue is one that is normally consigned to the executive branches, such that an international dispute is resolved by political negotiations between diplomats; or whether the issue is more suitable to the individual review that is given to litigants in judicial proceedings dealing with specific facts. <u>See</u> <u>generally</u> 12 A.L.R. Fed. 707 (2006) ("Modern Status of the Act of State Doctrine"). The fundamental criterion is whether the governmental action is a significant public act or whether

05-1238

18

it is a ministerial function, accompanied by whether the proposed judicial review is directed to the public interests of the nation as served by the governmental act, or is a private effort to enforce a private claim.

Clearly, the grant of a patent is not an Act of State, whether done by the United States or by a foreign country. No support has been offered for so creative an application of international law; this "doctrine" provides no support for this court's removal of judicial discretion of United States courts to resolve a commercial dispute between private parties involving private patent rights. The Act of State doctrine is not relevant to judicial review of the Voda foreign patents; patent validity and infringement are legal and commercial issues, not acts of state. This doctrine does not create an exception that excludes foreign patents from access to dispute resolution in our courts.

### *Enforcement Is Not An Issue*

There is no issue raised by either party concerning enforcement by a foreign court of the district court's potential decision concerning any of the Voda foreign patents. This case does not raise issues of comity, treaty, and diplomacy, when judgments are sought to be enforced in another country. The complexities of enforcement of foreign judgments, at which my colleagues hint, indeed serve to protect litigants from abusive procedures, and under the various protocols and treaties that relate to foreign judgments, a foreign court can refuse to accept a decision of another nation's tribunal. See Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 937-38 (D.C. Cir. 1984) ("No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum."); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 60 (2d Cir. 2004) ("orders of foreign courts are not entitled to comity if the litigants who procure them have 'deliberately

05-1238

courted legal impediments' to the enforcement of a federal court's orders") (citation omitted);

Finanz AG Zurich v. Banco Economico S.A., 192 F.3d 240, 246 (2d Cir. 1999) (judicial proceedings may receive comity to the extent that the "foreign court had proper jurisdiction and enforcement does not prejudice rights of United States citizens or violate domestic public policy"). See generally Restatement (Third) of Foreign Relations Law of the United States §§481-82 (1987) (recognition and enforcement of foreign judgments and grounds for non-recognition of such judgments).

The enforcement aspect was not raised by either party. The district court may have recognized that both Dr. Voda and Cordis Corporation, the manufacturer for all five countries, are within the district court's personal jurisdiction. In Forbo-Giubiasco, supra, the court explained that its findings with respect to the foreign patents were directed to the obligations of the parties to each other, and not to whether or how a foreign tribunal would view the decision.

The issues and relationships herein reinforce the district court's exercise of discretion to accept the amended complaint, and further impugns this court's withdrawal of the district court's discretion as to foreign patents. There is no sound reason why speculative concerns of enforcement in foreign countries warrant depriving the district court of its discretion to resolve this dispute between these United States parties. While we do not know the extent to which the district court might find liability and impose constraints in this case, the answer to this dispute is not to bar the court from hearing it.

### The Role of Patent Treaties

The panel majority proposes that it would violate the Paris Convention for the Protection of Industrial Property, the Patent Cooperation Treaty, and the TRIPS Agreement

05-1238

20

of the World Trade Organization, if the United States were to consider the validity and infringement of Dr. Voda's foreign patents. None of these treaties prohibits resolution by a national court of private disputes that include foreign patent rights. The question is not as presented by the panel majority, whether any treaty imposes "an international duty" on a nation's courts to render decision concerning foreign patents. The question is whether any treaty prohibits a national court from resolving a dispute between entities under the personal jurisdiction of the court. No treaty bars such dispute resolution.

### *Dispute Resolution is an Obligation of Courts*

The ruling of the panel majority departs not only from judicial precedent, but from judicial obligation. Although the court appears to concede that the district court may have "jurisdiction" to resolve the foreign aspects of this dispute, my colleagues hold that this authority cannot be exercised to resolve this dispute. This holding contravenes the judicial role. The district court has both the power and the obligation to resolve the dispute between the parties. See Cheney v. U.S. District Court for the District of Columbia, 542 U.S. 367, 370 (2004) (referring to the district court's constitutional responsibility to resolve cases and controversies within its jurisdiction); Kirkpatrick & Co. v. Envt'l Tectronics Corp. Int'l, 493 U.S. 400, 409 (1990) ("Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them.").

The majority postulates that discretion perhaps could be exercised "especially if circumstances change, such as if the United States were to enter into a new international patent treaty or if events during litigation alter a district court's conclusion regarding comity, judicial economy, convenience, or fairness." This is at best a confusing wrap-up to this important question, for no new international treaty is at hand, and the proposal that events

05-1238

21

during litigation may change the conclusion is not helpful, for the question is whether this litigation will be conducted at all.

The question here is simply whether, in a dispute between United States entities of whom the district court has personal jurisdiction, does the court have discretion to resolve aspects that concern foreign patents. The panel majority's conclusion that the court cannot exercise its discretion to do so is contrary to principle, practice, and judicial obligation.

### *Comity, Harmonization, and the Future*

Comity is a complex concept of international law, and its generalization to evict United States courts from their dispute-resolution obligation is not supported on any theory of comity. See Hilton v. Guyot, 159 U.S. 113, 164 (1895) (defining comity as "neither of absolute obligation . . . nor of mere courtesy and good will" but "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both the international duty and convenience, and to the rights of its own citizens . . . who are under the protection of its laws."). Comity has no relevance to the need to apply foreign law and the obligation and authority to meet that need. In Piper Aircraft, 454 U.S. at 260 n.29, the Court observed that "[t]he need to apply foreign law . . . alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate."

The panel majority raises the specter that foreign courts might adjudicate United States patent rights, proposing that if our courts are permitted to decide questions under foreign patent law, other countries will feel free to decide questions of United States patent law. Cordis too sounds the alarm, stating that creative litigants will choose exotic foreign forums to resolve complex patent issues, and that the district court's decision will open the

05-1238

door to international chaos.  I doubt that a United States district court is an exotic foreign forum; and it is not new for courts in other countries to apply the law of other nations when warranted.  Courts in other countries have not refrained from applying foreign patent law, including United States law.  A Japanese court recently applied the United States doctrine of equivalents in a suit between Japanese companies that included questions of infringement of United States patents, in <u>K.K. Coral Corp. v. Marine Bio K.K.</u>, Case No. 1943(wa)/2002 (Tokyo District Court, Oct. 16, 2003).  All nations have recognized their obligation to provide a judicial forum to address disputes involving their citizens; no warrant has been shown to remove foreign patents from this purview.

Proponents of patent "harmonization" point to the similarity of the policies that underlie patent law of all industrialized nations, and stress that for most technologies the same scope of practical protection is available to industrial development in all nations.  It would be anomalous indeed for the United States now to rule that the courts cannot understand patent principles as applied in other nations.

Preclusion and prejudgment are inappropriate and unnecessary.  From my colleagues' extreme limitation and bar on the district court's exercise of discretion to receive and resolve foreign patent issues, I respectfully dissent.